**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ELZBIETA KONFEROWICZ,
    *Plaintiff*,

    v.                                    No. 3:20-cv-00380 (JAM)

VERMONT MUTUAL INSURANCE CO.,
    *Defendant.*

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION**
**TO AMEND ANSWER TO ADD AFFIRMATIVE DEFENSES**

This insurance coverage dispute arises out of an altercation outside a Polish restaurant in June 2016. Plaintiff Elzbieta Konferowicz sued Mariusz Lempicki over injuries she sustained during the altercation, and a state court jury found Lempicki acted recklessly and negligently and awarded Konferowicz money damages. Konferowicz now brings this action as subrogee of Lempicki against defendant Vermont Mutual Insurance Company to enforce that judgment, which she argues Vermont Mutual is obligated to pay because of an insurance policy it issued to Lempicki's parents.

Vermont Mutual moves to amend its answer to add collateral estoppel and judicial estoppel as affirmative defenses to prevent Konferowicz from relitigating facts necessarily determined in the underlying state court action, including to prevent Konferowicz from arguing that Lempicki was acting in self-defense. Because I conclude that the jury's verdict did not necessarily determine that Lempicki was not subjectively acting in self-defense, as is relevant for the insurance policy at issue, I will deny Vermont Mutual's motion in part because such affirmative defenses would be futile. However, I will grant Vermont Mutual's motion to allow it to add general collateral estoppel and judicial estoppel affirmative defenses, which it may raise—

1

if warranted based on other arguments Konferowicz may make in this case—in ways that do not conflict with this ruling.

## BACKGROUND

Konferowicz and her husband own the Belvedere Bar & Restaurant, a restaurant serving Polish cuisine in New Britain, Connecticut.[1] In June 2016, Lempicki was at the restaurant for a watch party for a European soccer game.[2] A fight broke out inside the bar involving Lempicki, and he left the restaurant.[3] As Lempicki was leaving, Konferowicz and her husband were seated at a table on the outdoor patio having lunch.[4] Konferowicz and her husband left the patio by different routes to try to stop Lempicki.[5] Konferowicz and Lempicki then encountered each other, and Lempicki hit Konferowicz, breaking her nose and causing other injuries.[6]

In June 2017, Konferowicz sued Lempicki in Connecticut state court over the incident, asserting claims of negligence, recklessness, and intentional tort.[7] Because it had issued a homeowner's insurance policy to Lempicki's parents, Vermont Mutual retained counsel to represent Lempicki in the state court litigation subject to a reservation of rights.[8] The intentional tort claim was withdrawn in the state court action, and the case proceeded to trial in September 2019 on the claims of negligence and recklessness.[9]

---

[1] Docs. #13 at 3 (¶ 1); #24 at 3.
[2] Docs. #13 at 3 (¶ 2); #24 at 3.
[3] Doc. #24 at 4.
[4] Doc. #13 at 3 (¶ 3).
[5] *Ibid*. (¶ 4).
[6] *Ibid*. (¶¶ 5-6); Doc. #1 at 9 (¶ 6).
[7] Doc. #13 at 3 (¶¶ 7-8).
[8] *Ibid*. (¶¶ 10-12).
[9] *Ibid*. (¶ 9).

At trial, Konferowicz argued that Lempicki acted unreasonably and recklessly in striking her, while Lempicki argued that he acted in self-defense.[10] On the issue of recklessness, the jury was instructed in pertinent part:

> In order to establish a claim for recklessness, it is unnecessary to prove that the defendant actually intended to harm the plaintiff in order to establish that he acted recklessly. However, there is a wide difference between reckless behavior and mere negligence or even gross negligence. Thoughtlessness and inadvertence … are not reckless. Reckless implies a conscious disregard of a high risk or egregious misconduct that involves an extreme departure from ordinary care and where danger is apparent. It connotes a willingness to take high risk without regard to the … consequences or the safety of others.
>
> The state of mind amounting to recklessness may be inferred from conduct, but in order to infer it, there must be something more than a … failure to exercise a reasonable degree of watchfulness. To be reckless, the actor must recognize that his action or failure to act involves a risk to others substantially greater than that which is necessary to constitute negligence. It requires a … conscious choice [of a] course of action either with knowledge that it will involve serious danger to others or with the knowledge of facts that would disclose this danger to any reasonable person.[11]

On the issue of self-defense, the jury was instructed in pertinent part:

> The defendant claims that if you find that he committed the alleged negligence and reckless claims, the defendant was justified because he acted throughout this incident solely in defense of his own person against an attack made upon him by Ms. Konferowicz. … To avail himself of this defense, the defendant must have reasonably believed that he was in imminent danger of suffering force or violence to his person and that it was reasonably necessary for him to act in self-defense. Second, the defendant must not have been the aggressor. That is to say, he must not have been the one who instigated the physical conflict. But if you find that the defendant was not the aggressor, the defendant must have used only such force or violence as reasonably necessary for him to protect himself from injury. In other words, the defendant cannot have exceeded the bounds of conduct which a reasonable person in the defendant's position would consider for his protection. If you find these facts to have been proven, then you will find for the defendant on the plaintiff's claims.[12]

---

[10] Doc. #22-1 at 16, 53-56.

[11] Doc. #27 at 34-35.

[12] *Id*. at 36-37.

Although the jury was instructed on the issue of self-defense, the verdict form did not have a specific interrogatory related to self-defense.[13]

The jury returned a verdict for Konferowicz on counts of negligence and recklessness, and awarded Konferowicz $116,175.09 in damages, which was reduced to a $96,519.22 judgment following a collateral source hearing in January 2020.[14] Konferowicz's judgment against Lempicki remains unsatisfied.[15]

Konferowicz filed this lawsuit in Connecticut state court in March 2020 as subrogee of Lempicki to enforce her judgment pursuant to Conn. Gen. Stat. § 38a-321, and Vermont Mutual timely removed the state court action to this Court.[16] Konferowicz pleads four counts against Vermont Mutual for failing to satisfy the judgment against Lempicki: negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.[17]

Vermont Mutual filed its answer in April 2020 and pleaded various affirmative defenses, including that Konferowicz's claims are barred by a policy exclusion for "bodily injury" or "property damage" "which is expected or intended by the 'insured,'" and that there "is no coverage to the extent that the claims for coverage are barred by the doctrines of waiver, estoppel, unclean hands and/or laches."[18]

On November 5, 2020—four days after Vermont Mutual's deadline to amend its pleadings under the scheduling order—Vermont Mutual filed this motion to amend its answer to add three affirmative defenses: 1) collateral estoppel to bar Konferowicz from arguing that

---

[13] Doc. #22-1 at 61-62.
[14] *Id*. at 61, 64.
[15] Doc. #1 at 12 (¶ 21).
[16] Doc. #1.
[17] *Id*. at 12-18.
[18] Doc. #12 at 4-6.

Lempicki was acting in self-defense (proposed seventh affirmative defense); 2) a more general collateral estoppel defense against relitigating issues and facts necessarily determined in the underlying state court action (proposed eighth affirmative defense); and 3) a judicial estoppel defense precluding Konferowicz from taking a position inconsistent with a position taken in the underlying state court action (proposed ninth affirmative defense).[19] Vermont Mutual states that it seeks to add these affirmative defenses now because it became aware that Konferowicz would argue that Lempicki was acting in self-defense, which it argues was rejected by the jury's verdict and is contrary to the position that Konferowicz had taken in the underlying litigation.[20] Konferowicz filed an opposition to the motion, and Vermont Mutual has filed a reply. I heard oral argument from counsel on December 7, 2020, and the parties subsequently submitted supplemental briefing. This ruling now follows.

## DISCUSSION

Vermont Mutual's motion for leave to amend its answer is governed by Federal Rule of Civil Procedure 15. Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a "permissive standard," but denial of leave to amend may be appropriate in circumstances involving "undue delay, bad faith, dilatory motive, and futility." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Of these potential grounds for denying the motion for leave to amend, the only one that the parties contest is whether Vermont Mutual's proposed affirmative defenses are futile.

The Second Circuit has held that a motion for leave to amend to add an affirmative defense is properly denied if the "proposed amendment is futile" and if the "action would result in the same outcome." *Quanta Specialty Lines Ins. Co. v. Inv'rs Capital Corp.*, 403 F. App'x

---

[19] Docs. #22; #22-1 at 7.
[20] Doc. #22-1 at 1, 5.

530, 532-33 (2d Cir. 2010). An affirmative defense is not futile so long as it states plausible grounds for a valid defense under the law. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019).

Starting with collateral estoppel, Vermont Mutual seeks to add two collateral estoppel defenses to bar Konferowicz from arguing that Lempicki was acting in self-defense (which it contends was necessarily rejected by the jury's verdict) and to more generally prevent Konferowicz from relitigating facts and issues necessarily determined in the prior action. Doc. #22-1 at 7. Under Connecticut law, "[c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." *New England Estates, LLC v. Town of Branford*, 294 Conn. 817, 838 (2010) (citation omitted). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined … An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Id.* at 839 (same). "In order for collateral estoppel to bar the relitigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding." *Ibid.* (same).

Vermont Mutual also seeks to add a judicial estoppel defense that "the plaintiff is precluded from taking a position that is inconsistent with a position taken in the underlying action." Doc. #22-1 at 7. Judicial estoppel seeks "to protect the integrity of the judicial process" and prohibits "parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (citations omitted). Generally, a party asserting judicial estoppel must show: (1) that the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding; (2) that this inconsistent

position was adopted by the first tribunal in some manner, such as by rendering a favorable

judgment; and (3) that the equities weigh in favor of estoppel. *See id*. at 750-51; *Clark v. All

Acquisition, LLC*, 886 F.3d 261, 266-67 (2d Cir. 2018). Judicial estoppel is invoked within the

Court's discretion "to prevent improper use of judicial machinery." *New Hampshire,* 532 U.S. at

749 (internal quotation omitted).

   Although collateral estoppel and judicial estoppel are distinct affirmative defenses,

Vermont Mutual's counsel agreed at oral argument that they are essentially co-extensive in this

case, at least as they relate to arguments about self-defense, because they each turn on what the

jury in the underlying state court case necessarily decided when it found that Lempicki acted

recklessly. Therefore, I will consider collateral estoppel and judicial estoppel together for the

purpose of this motion, focusing on what was necessarily decided in the underlying state court

proceeding.

   Vermont Mutual argues that the jury's verdict that Lempicki acted recklessly means it

necessarily rejected Lempicki's special defense of self-defense. Vermont Mutual argues that if

Lempicki did not act in self-defense, then the incident would not be an "occurrence" triggering

insurance coverage, which the policy defines as "an accident, including continuous or repeated

exposure to substantially the same general harmful conditions, which results" in "bodily injury"

or "property damage." Doc. #30-1 at 5. The policy exclusion for "bodily injury" or "property

damage" "which is expected or intended by the 'insured'" could also prevent coverage if

Lempicki did not act in self-defense. *Id*. at 15.

   The flaw in Vermont Mutual's argument is that self-defense and recklessness in the

underlying tort action were assessed under an objective reasonable person standard, whereas a

subjective inquiry is used to determine whether the insurance policy provisions at issue apply. In

*Vermont Mut. Ins. Co. v. Walukiewicz*, 290 Conn. 582 (2009), the Connecticut Supreme Court analyzed an identical insurance policy to the one at issue here. The injured party argued that "subjective intent was relevant for purposes of determining both whether the incident at issue was an accident, and, therefore, an occurrence for which coverage was afforded, and whether Walukiewicz expected or intended bodily injury to Brown, such that the intentional injury exclusion would apply to preclude coverage." *Id*. at 589. Vermont Mutual argued that the trial court had properly applied an objective standard in determining whether the insurance policy covered the incident at issue. *Id*. at 590. But the Connecticut Supreme Court "agree[d] with the position advocated by" the injured party and reversed the trial court's decision. *Ibid*.

In doing so, the Connecticut Supreme Court first explained that an "occurrence" or "accident" under the policy "encompasses actions taken by an insured in legitimate self-defense," which "are unplanned and unintentional." *Id*. at 597. The "relevant inquiry in determining whether an accident has occurred is whether the injuries at issue were caused by the intentional design of the insured, or rather, by a sudden, unforeseen event." *Id*. at 594; *see also Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 775 (2013) ("we have held that [a]n accident is an event that is unintended from the perspective of the insured" and "[i]n the context of a homeowner's insurance policy, the motive of the acting party is determinative of whether an act was intentional or accidental") (internal citations omitted); *Allstate Ins. Co. v. Barron*, 269 Conn. 394, 408 n.10 (2004) (an accident is "an event of unfortunate character that takes place *without one's foresight or expectation*") (citation omitted) (emphasis in original).

Next, the Connecticut Supreme Court explained that "the intentional injury exclusion does not preclude coverage for injuries resulting from legitimate acts of self-defense because those injuries were not expected or intended by the insured." *Walukiewicz*, 290 Conn. at 599.

8

The Connecticut Supreme Court specifically "reject[ed] the plaintiff's argument that the objective rule of intent used in tort and criminal law, on which the trial court relied, should control the interpretation of an intentional injury exclusion in an insurance contract" because, among other reasons, "a purely subjective standard governs the determination of whether the insured expected or intended the injury." *Id*. at 598 n.18 (citation omitted). Moreover, "[i]n the context of determining whether an intentional injury exclusion applies, whether an act of self-defense is legitimate is not predicated on whether the defendant's belief that the degree of force used was necessary is objectively reasonable." *Id*. at 599 n.19. The Connecticut Supreme Court "conclude[d] that the trial court improperly granted the plaintiff's two motions *in limine* on the reasoning that an objective inquiry as to intent to injure governed both the assessment of whether the events of April 15, 2002, constituted an 'occurrence' and whether the intentional injury exclusion of the policy applied." *Id*. at 601-602.

Therefore, it is clear that under Connecticut law the proper inquiry for determining whether insurance coverage is available under Vermont Mutual's policy—for both whether an "occurrence" took place and whether the intentional injury exclusion applies—focuses on the insured's subjective intent and expectation, including whether the insured subjectively believed he acted in self-defense.

The key question for this motion, then, is whether the jury's verdict necessarily determined that Lempicki did not act in self-defense from a *subjective* perspective. It is clear that the jury did not necessarily make that determination. The jury instruction related to self-defense made clear that it was an objective inquiry: "the defendant must have reasonably believed that he was in imminent danger of suffering force or violence to his person and that it was reasonably necessary for him to act in self-defense." Doc. #27 at 36-37. Therefore, in rejecting self-defense,

9

the jury did not necessarily reject that Lempicki subjectively believed he was acting in self-defense, even if that belief was objectively unreasonable.

Likewise, the jury was instructed that "[r]eckless implies a conscious disregard of a high risk or egregious misconduct that involves an extreme departure from ordinary care." *Id*. at 34-35. That instruction makes clear that a finding of recklessness could be predicated on an intentional or expected act *or* an act that was highly unreasonable under an objective standard even if Lempicki did not subjectively expect, intend, or understand his actions.

Vermont Mutual emphasizes that the jury was instructed that a recklessness finding requires a "conscious choice of a course of action," such that Lempicki's actions could not have been unexpected or unintended as required for there to be an "occurrence" to trigger insurance coverage. *Id*. at 7, 9; Doc. #30 at 3-4. But that quote omits the remainder of that part of the jury instruction, which states in full that recklessness requires a "conscious choice [of a] course of action *either* with knowledge that it will involve serious danger to others *or with the knowledge of facts that would disclose this danger to any reasonable person*." Doc. #27 at 35 (emphasis added). In other words, because the jury may have predicated its recklessness finding on a conclusion that Lempicki was only objectively reckless (that he acted only "with the knowledge of facts that would disclose this danger to any reasonable person"), the jury's verdict on recklessness does not foreclose the possibility that Lempicki subjectively believed he was acting in self-defense.

Vermont Mutual also argues that the Connecticut Supreme Court's use of the term "legitimate self-defense" means that a person could not simultaneously act recklessly and in "legitimate" self-defense. Docs. #27 at 3-4; #30 at 4. But it is clear from the Connecticut Supreme Court's decision that whether an insured party acted in "legitimate self-defense" is still

10

to be determined from the insured's subjective perspective. As it explained, "[b]ecause the proper inquiry is a subjective one, the insured's subjective intent at the time of the occurrence, in particular, whether he was acting in legitimate self-defense, is determinative of whether the exclusion applies." *Walukiewicz*, 290 Conn. at 599. Regardless of whether "reckless" is in some instances conflated with "willful" or "intentional," it is clear that the jury instructions for recklessness did not require a finding of intentional or willful action by Lempicki.

As a result, the self-defense issues presented in this insurance dispute are not identical to those in the underlying tort action, and the jury's finding of recklessness did not *necessarily* determine that Lempicki did not act in self-defense from his subjective perspective. Accordingly, collateral estoppel and judicial estoppel cannot, as a matter of law, preclude Konferowicz from arguing in this action that Lempicki acted in self-defense. *See Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.*, 905 F.3d 84, 94 (2d Cir. 2018) ("Since the recklessness standard differs from the subjective standard" under Connecticut law, "collateral estoppel cannot be applied to" preclude insurance coverage based on recklessness finding in prior action) (citations omitted); *Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc.*, 10 F. Supp. 3d 252, 265 (D. Conn. 2014) (because "[r]ecklessness … is not akin to 'expectation' as a matter of law[,]" a "jury's conclusion that Paramount acted recklessly neither establishes nor precludes a finding of 'expected' or 'intended' injury as a matter of law").

The other cases Vermont Mutual relies on are not applicable to this action because they did not address the interaction between recklessness and self-defense. Docs. #27 at 6; #30 at 5. Rather, each involved the application of collateral estoppel to a self-defense claim when a prior verdict necessarily found the insured intended to commit an act. *See Massachusetts Homeland Ins. Co. v. Washington*, 95 Mass. App. Ct. 1111, at *2 (2019) ("the facts alleged in his complaint

are precisely those the jury in the criminal case found to be intentional beyond a reasonable doubt" in reaching assault and battery convictions); *Watkins v. S. Farm Bureau Cas. Ins. Co.*, 2009 Ark. App. 693, 8-9 (2009) (collateral estoppel applied because jury "found that he was the aggressor or that his actions were not otherwise justified" in returning a verdict on assault and battery); *Baber v. Fortner by Poe*, 186 W. Va. 413, 421 (1991) ("the issue of the appellant's intent was submitted to a jury which found him guilty, beyond a reasonable doubt, of voluntary manslaughter. … [T]he adjudication of a killing which results in a voluntary manslaughter conviction conclusively establishes the intentional nature of that same act for the purposes of any subsequent civil proceeding"). While a verdict that a defendant acted intentionally may mean that a jury necessarily rejected a defendant's argument that he acted in self-defense, a jury's finding that a defendant acted recklessly does not, at least with regard to subjective self-defense.

Finally, Vermont Mutual urges that it is premature to decide the merits of its affirmative defenses at this stage. Although I might agree with that rationale in many cases, here the parties have represented that no further facts could be provided or discovered that would affect the viability of the affirmative defenses. Because the affirmative defenses turn entirely on interpreting the record in the underlying state court case as a matter of law, there is no reason for me to defer my decision on whether they are futile until a later stage in this case.[21]

I conclude that the jury's verdict that Lempicki acted recklessly cannot preclude Konferowicz from arguing that Lempicki subjectively acted in self-defense, including for purposes of determining whether there was an "occurrence" to establish insurance coverage and whether the expected or intended injury exception applies in this action. Accordingly, I will deny

---

[21] Vermont Mutual has recently filed a motion for summary judgment. Doc. #33. To the extent that the evidentiary record as presented in the parties' summary judgment filings may suggest a different outcome, the Court will be prepared to consider such evidence. The Court's ruling here is based on the more limited record when this motion was briefed than the summary judgment record.

Vermont Mutual's motion for leave to amend its answer to add collateral estoppel and judicial estoppel as affirmative defenses insofar as they relate to the jury's finding of recklessness and whether Lempicki acted in self-defense because such defenses would be futile. Vermont Mutual may not add its proposed seventh affirmative defense, or invoke collateral estoppel or judicial estoppel in a manner inconsistent with this ruling.

To be clear, this ruling is without prejudice to Vermont Mutual arguing that this incident is not covered by its policy because Lempicki did not act in self-defense. It simply means that Vermont Mutual cannot rely on the state court verdict to automatically bar Konferowicz from arguing that Lempicki acted in self-defense and is covered under the policy.

Nonetheless, I recognize that, given the posture of this case, there is a potential that Konferowicz could attempt to relitigate issues or facts that were necessarily determined in the underlying state court action, or to take positions that are wholly inconsistent with positions she took that were adopted in the state court action. I also recognize, as the parties' arguments seem to implicitly assume, that although Vermont Mutual has pleaded a general estoppel defense, Doc. #12 at 6, it could be argued that this is not sufficient to plead a collateral estoppel or judicial estoppel affirmative defense. *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2010 WL 985201, at *2 (E.D.N.Y. 2010) (defendant's "general estoppel defense in its Answer is insufficient" to preserve judicial estoppel as an affirmative defense when defendant tried to raise judicial estoppel for the first time on the eve of trial). Therefore, I will grant Vermont Mutual's motion to allow it to add the general affirmative defenses of collateral estoppel and judicial estoppel to its answer, which it may raise in ways that do not conflict with this ruling.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Vermont Mutual's motion to amend its answer to add affirmative defenses (Doc. #22). Vermont Mutual may not add its proposed seventh affirmative defense. It may add its more general proposed eighth and ninth affirmative defenses, but may not invoke collateral estoppel or judicial estoppel in this case in a manner inconsistent with this ruling.

It is so ordered.

Dated at New Haven this 13th day of April 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge